Filed 8/24/22  Balmuccino v. Starbucks Corp. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BALMUCCINO, LLC<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant and Respondent. | B308344<br><br>(Los Angeles County Super. Ct. No. 19STCV37444) |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert Byrdsong, Judge.  Affirmed.

Martorell Law, Eduardo Martorell and JoAnn Victor for Plaintiff and Appellant.

K & L Gates, Paul W. Sweeney, Jr., Kevin S. Asfor and Kate G. Hummel for Defendant and Respondent.

_____

Balmuccino, LLC appeals from an order granting Starbucks Corp.'s motion to quash service of summons for lack of personal jurisdiction. Starbucks's ubiquitous retail presence in California notwithstanding, it is a Washington corporation and the controversy between the parties is not related to and does not arise out of Starbucks's contacts with the State of California. We affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

In 2016, California residents Samantha Lemole, Meredith Scott Lynn, Vince Spinnato, and Faith Miller began developing a line of coffee-flavored lip balms. In June 2017, Lemole's brother-in-law approached Starbucks's then-CEO about the lip balms. The CEO, who was an acquaintance, advised that Lemole should meet with Starbucks's Head of Product Development and Senior Vice President, Mesh Gelman. On June 19, 2017, Lemole emailed Gelman to coordinate a meeting. After a series of emails on logistics, on October 19, 2017, Lemole, Lynn, Spinnato and Miller flew from California to meet with Gelman and his assistant in Starbucks's New York offices.

At the meeting, the four pitched their idea and gave Gelman prototypes of the product, including 12 lip balms specifically aligned with Starbucks's top 12 flavors. Gelman declined to sign a nondisclosure agreement, kept the presentation and prototypes, and promised to explore the possibility of a partnership. Gelman left Starbucks's employment shortly after the meeting and nothing came of the meeting. The following year, on November 15, 2018, Lemole, Lynn, Spinnato and Miller formed Balmuccino as a California limited liability company.

On October 18, 2019, Balmuccino brought suit against Starbucks for breach of an oral or implied contract, breach of

2

confidence, and trade secret misappropriation.[1]  The complaint alleged Starbucks reached out to one of Balmuccino's suppliers in 2018 to inquire about coffee-flavored lip balms and presented prototypes that were "identical" to those provided to Gelman during the pitch meeting.  Balmuccino further alleged Starbucks manufactured and distributed coffee-flavored lip glosses in a nationwide promotion that benefitted Starbucks's retail sales in California.

Starbucks moved to quash service of summons for lack of personal jurisdiction.  It asserted general or all-purpose jurisdiction was lacking because it is a corporation formed under the laws of the State of Washington with its headquarters in Seattle.  Starbucks submitted evidence that all its corporate executive decisions, including product development and marketing, are made in Washington, where all of its senior officers reside and work.

Starbucks also denied it was subject to specific or case-linked jurisdiction because it did not purposely avail itself of the benefits of doing business in California in connection with the subject matter of the complaint; Balmuccino's claims did not arise out of Starbucks's contacts with California; and the assertion of jurisdiction over Starbucks would not comport with traditional notions of "fair play and substantial justice."  It asserted its only in-person contact with Balmuccino's members occurred in New York.  Nothing came of the meeting and there were no further communications between the parties after the October 19, 2017 meeting.

---

[1]  Before filing suit, the four individual members of the LLC assigned to Balmuccino their individual rights and claims against Starbucks.  The only plaintiff is Balmuccino.

Starbucks further explained its lip gloss promotion was not connected to Balmuccino's product.  The Group Marketing Manager in charge of the promotion affirmed he knew nothing about Balmuccino's products or any pitch made to Starbucks about coffee-flavored lip balm.  He explained Starbucks conducted a four-day social media contest in the United States and Canada from April 30 to May 3, 2019, in connection with the return of Starbucks's S'mores Frappuccino to its retail stores.  Ten winners received a $500 Starbucks gift card, a "Sip Kit," consisting of four S'mores-flavored lip glosses, and other promotional items.[2]  None of the winners was located in California nor were the Sip Kits sold anywhere.

Balmuccino opposed the motion to quash, asserting Starbucks knew it was meeting with California residents, knew Balmuccino's products were manufactured in California, and had misappropriated trade secrets from a California company.[3]  The trial court granted the motion and dismissed the action for lack of personal jurisdiction.  Balmuccino timely appealed.

---

[2]    The lip glosses consisted of three nude-brown-caramel shades, and one iridescent white shade.  They were called Chocolicious Bliss, Marshmallow Glow, Campfire Spark, and Graham Glam.

[3]    On appeal, Starbucks renews its objections to the declarations of two Balmuccino members — Spinnato and Lynn.  The record does not reflect that the trial court ruled on the objections.  We will assume (without deciding) that the declarations were properly admitted. Even so, as we shall discuss, the trial court's ruling on the motion to quash was correct.

4

## DISCUSSION

It is undisputed Starbucks is a Washington corporation and Balmuccino does not contend that Starbucks is subject to general jurisdiction in California.  Rather, it asserts California courts have specific jurisdiction over Starbucks, relying on Balmuccino's development of the product in California, its members' residence in California, its communications with Gelman and others at Starbucks while its members were in California, and the damage Starbucks caused to Balmuccino's business located in California.  We conclude that this argument turns specific jurisdiction on its head:  it is not the plaintiff's connections with the forum state that drive the inquiry. Our attention is directed to the defendant's contacts with California.  "The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." (*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (2017) —— U.S. ——, 137 S.Ct. 1773, 1779, 198 L.Ed.2d 395 (*Bristol-Myers*).)

### 1.    *Legal Principles and Standard of Review*

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  (Code Civ. Proc., § 410.10.)  The constitutional limit is found in the due process clause, which requires a defendant to have sufficient "minimum contacts" with the forum state to satisfy " 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)  Two kinds of personal jurisdiction exist: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." (*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.* (2021) —— U.S. ——, 141 S.Ct. 1017, 1024, 209 L.Ed.2d 225 (*Ford*).)

5

"A court may exercise specific jurisdiction over a nonresident defendant only if:  (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269; accord *Ford, supra*, 141 S.Ct. at p. 1024 [citing cases].)

"When a defendant moves to quash service for lack of personal jurisdiction, the plaintiff bears the burden of proving facts supporting the exercise of jurisdiction by a preponderance of the evidence.  [Citation]  When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence.  [Citation.]  When there is no conflict in the evidence, however, the question of jurisdiction is one of law and the reviewing court engages in an independent review of the record.  [Citation.]" (*Bader v. Avon Products, Inc.* (2020) 55 Cal.App.5th 186, 192–193 (*Bader*); accord *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449.)

2. ***The Controversy Does Not Arise from Starbucks's Contacts with California***

For purposes of this opinion, we will assume that, notwithstanding Starbucks's argument to the contrary, Starbucks has purposefully availed itself of the benefits of California through its extensive business in the state.[4]

---

[4]    Starbucks's argument on appeal tends to conflate the first and second elements of specific jurisdiction.  "Purposeful

6

The Supreme Court most recently addressed specific jurisdiction in *Bristol-Myers, supra*, 137 S.Ct. at page 1773 and *Ford, supra*, 141 S.Ct. at page 1017.

In *Bristol-Myers*, over 600 plaintiffs brought claims in a consolidated action against the defendant pharmaceutical company in California, all alleging injuries caused by the defendant's drug. (*Bristol-Myers, supra*, 137 S.Ct. at p. 1779.) While some of the plaintiffs were California residents, most had no connection to California and did not allege that they obtained the drug in California, were injured there, or were treated there. Using a "sliding scale" approach, the California Supreme Court had reasoned that the defendant had extensive contacts with California and thus personal jurisdiction over the defendant as to the nonresident's claims could be based " 'on a less direct

---

availment" deals with the sufficiency of a defendant's overall conduct directed toward the forum state. The second element is concerned with the connection between the forum-directed activities and the claims asserted against the defendant in the plaintiff's complaint. The distinction was colorfully made by the United States Supreme Court in *Ford*. The issue there was whether two automobile accidents were sufficiently related to Ford's activities in the respective forum states. Ford conceded purposeful availment, which the Supreme Court noted was a "small wonder": "By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias." (*Ford, supra*,141 S. Ct. at p. 1028.) The same can be said about Starbucks.

7

connection . . . than might otherwise be required.' " (*Id.* at
p. 1779.)

The *Bristol-Myers* court rejected this sliding scale
approach, stating that for "specific jurisdiction, a defendant's
general connections with the forum are not enough." (*Id.* at
p. 1781.) "In order for a state court to exercise specific
jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the
defendant's contacts with the forum.' " (*Id.* at p. 1780, quoting
*Daimler AG v. Bauman* (2014) 571 U.S. 117, 118.) Nor could
personal jurisdiction over the *nonresident* plaintiffs' claims be
based on California having personal jurisdiction over the *resident*
plaintiffs' claims: "The mere fact that *other* plaintiffs were
prescribed, obtained, and ingested [the drug] in California—and
allegedly sustained the same injuries as did the nonresidents—
does not allow the State to assert specific jurisdiction over the
nonresidents' claims." (*Bristol-Myers, supra*, 137 S.Ct. at
p. 1781.) The *Bristol-Myers* court found specific jurisdiction over
the defendant as to the nonresident claims was improper because
"[w]hat is needed—and what is missing here—is a connection
between the forum and the specific claims at issue." (*Ibid.*) The
plaintiffs were not residents of California, did not claim to have
suffered harm in California, and "all the conduct giving rise to
the nonresidents' claims occurred elsewhere." (*Id.* at p. 1782.)

In *Ford*, the high court added a new layer to specific
jurisdiction caselaw, figuratively putting in bold font the "or" in
"must arise out of **or** relate to the defendant's contacts." (*Ford,
supra,* 141 S.Ct. at p. 1025.) *Ford* arose from two products-
liability suits where the plaintiffs were injured in car accidents
involving Ford vehicles in Montana and Minnesota. (*Id.* at pp.
1025–1026.) Ford contended it was not subject to specific

8

jurisdiction in either state, focusing on the "arise out of or relate to" second element.  It asserted the two Ford vehicles at issue were not designed, manufactured, or originally sold in Montana or Minnesota.  (*Id.* at pp. 1020–1021.)  The Supreme Court rejected Ford's position that "only a strict causal relationship" would be sufficient to establish the requisite connection between the lawsuits and Ford's forum-directed activities.  (*Id.* at p. 1026.)

The high court explained, the "arise out of" requirement speaks to causation while the "relate to" requirement "contemplates that some relationships will support jurisdiction without a causal showing." (*Ford, supra*, 141 S. Ct. at p. 1026.)  Under this formulation, "[a] different State's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the State."  (*Ibid.*)  The court reasoned "that when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products causing injury there."  (*Id.* at p. 1027.)  Because "Ford had advertised, sold, and serviced those two car models in both States for many years," there was a strong " 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction."  (*Id.* at p. 1028.)

The *Ford* court cautioned, however, "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." (*Id.* at p. 1026.)

We encounter one of the "real limits" in this case. Balmuccino contends six points of contact connect the controversy and Starbucks to California:  (1) it is home to the entirety of the

9

Balmuccino team; (2) the ideas that led to the business venture arose in California; (3) the chemistry, ingredient lists and formulations were developed in California; (4) the product design and prototypes were developed in California; (5) the pitch points and pitch deck that were used in the New York meeting were created in California; and, (6) all of the communications with the Balmuccino team, other than when the parties met in New York, occurred while the team was in California.[5]

None of the six points of contact confer specific jurisdiction over Starbucks because they only relate either to Balmuccino's contacts with California or Starbucks's contacts with Balmuccino, not with Starbucks's contacts with California involving the subject of this lawsuit. The Supreme Court has consistently rejected attempts to satisfy the defendant-focused " 'minimum contacts' inquiry" solely through evidence of the contacts between the plaintiff and the forum state or the defendant's contacts with residents of that state. (*Walden v. Fiore* (2014) 571 U.S. 277, 284–285.)

---

[5] We do not know which facts the trial court found or considered important to its ruling because plaintiffs have not supplied us with a reporter's transcript, and there is no written ruling. In their absence, we presume the trial court findings are supported by the evidence and imply all findings necessary to support the judgment. (See Cal. Rules of Court, rule 8.120(b) ["[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of" a reporter's transcript, an agreed statement, or a settled statement]; *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

Specifically, the six points of contact identified by Balmuccino do not demonstrate that the alleged trade secret misappropriation "arises out of or relates to" Starbucks's contacts with California as required by *Ford, Bristol-Myers*, and a long line of Supreme Court precedent. Balmuccino cites to Starbucks's 3,034 stores in California but fails to identify how that retail activity is connected to the alleged trade secret misappropriation. Balmuccino has failed to show, even under the new formulation discussed in *Ford,* that its claims "relate to" Starbucks's California stores. That is because there is no forum-related activity or occurrence by Starbucks that took place in California. Like in *Bristol-Myers*, all the conduct giving rise to Balmuccino's claims occurred elsewhere: the disclosure of the trade secrets occurred in New York, Starbucks's development of the lip glosses occurred in Washington, and the lip glosses were awarded to residents of other states. The same analysis applies to Balmuccino's other causes of action as well.

Balmuccino attempts to link the controversy to Starbucks's retail presence in California through the "Sip Kit" lip glosses. According to Balmuccino, Starbucks "purposefully and successfully extract[ed] information from a California cohort and integrat[ed] trade secrets into a national promotion that was clearly meant, in part, to drive sales in Starbucks's huge market in California. . . ."

The uncontroverted evidence before us is that the Sip Kit lip glosses, as well as the entire promotional campaign, were created, developed, and launched in Washington, not California. No Sip Kit lip glosses were awarded to anyone in California, and none was sold in California. To the extent Balmuccino alleges the four lip glosses, which were part of a much larger award that

11

included a $500 Starbucks gift card and other promotional items, drove Starbucks's retail sales in California, Balmuccino has presented no evidence to support that claim.  Neither we nor the trial court may speculate on the truth of these allegations.  The undisputed evidence is the promotion was conducted over four days throughout the United States and Canada, not only California.  From these facts, Balmuccino has not demonstrated its controversy is related to or arises out of Starbucks's contacts with the State of California.

## DISPOSITION

The trial court's order is affirmed.  Starbucks to recover its costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.                                    KIM, J.